IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLIN C. RUDY, on his behalf, and on behalf of others similarly situated, Plaintiff, | § § § § | |
| v. | § | Civil Action No. 3:08-CV-0904-L (BF) |
| CONSOLIDATED RESTAURANT COMPANIES, INC., et al., Defendants. | § § § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this case to the United States Magistrate Judge for pretrial management (doc. 31). Before the Court for consideration is the Motion for Partial Summary Judgment (doc. 73) filed by Representative Plaintiff Colin Rudy ("Rudy") on behalf of waiters or servers (collectively, "Plaintiffs") at the Silver Fox Steakhouse in Fort Worth, Texas ("Silver Fox"). Also under consideration is the Motion for Summary Judgment (doc. 75) filed by Defendant Good Eats Restaurants of Texas, L.P. ("Defendant"). Plaintiffs seek to recover unpaid wages under 29 U.S.C. § 216(b), a provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Rudy filed a motion for conditional class certification and court-facilitated notice to potential class members. The Court granted conditional class certification, and twenty-seven opt-in claimants joined this case. After careful consideration of the motions, responses, replies, appendixes, record evidence, and the applicable law, the Court recommends that the District Court grant Defendant's Motion for Summary Judgment (doc. 75) and deny Plaintiffs' Motion for Partial Summary Judgment (doc. 73).

## Background

Rudy worked as a waiter or server at Silver Fox from August, 2005 through May, 2008. Defendant, a wholly owned subsidiary of Consolidated Restaurant Companies, Inc., owns Silver Fox. (Doc. 27 at 7.) Plaintiffs stipulated to the dismissal of Consolidated Restaurant Companies, Inc. (Doc. 81.) Plaintiffs claim that Defendant violated the FLSA by requiring its servers to share tips with the maître d's at Silver Fox. Rudy admits that he was paid at least minimum wage for the hours he worked. (Def.'s App. 58.) However, the fact that employees received at least minimum wage is not dispositive where the employees claim that the tip pool is illegal and that an employer failed to satisfy the FLSA's prerequisite for notice. *See, e.g.*, *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467-68 (5th Cir. 1979) (strictly construing the terms of the FLSA).

## Threshold Matter

Defendant contends the two-year statute of limitations bars consideration of the actions taken by Chris Garvin and Katrina Wade when they were maître d's at Silver Fox. (Def.'s Mot. for Summ. J. Br. at 4, n.29). Plaintiffs argue that the statute of limitations for a willful violation of the FLSA is three years and that time-barred acts are admissible evidence when they are relevant to timely claims. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 2, n.1.) The Fifth Circuit Court of Appeals recognizes that "although time-barred acts themselves can create no present legal consequences, they 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.'" *Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 200 (5th Cir. 1992) (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). Accordingly, if the parties have submitted competent summary judgment evidence with respect to whether the practices at issue from

May 28, 2005-May 28, 2008 constitute a willful violation of the FLSA the Court may consider it. The Court may consider as background evidence competent summary judgment evidence of events that occurred before May 28, 2005, provided they are relevant to practices during the period at issue.

## Standard of Review

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where, as here, a case is presented by way of cross-motions for summary judgment, each movant has the burden of producing evidence to support its motion. A movant who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). By contrast, a party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, Tex., 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the motion.

*See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993). An FLSA plaintiff must prove by a preponderance of evidence that he or she "performed work for which he [or she] was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).

The Court must determine whether the maître d's at Silver Fox were tipped employees or employers under the FLSA. The determination of whether the maître d's are employers under the FLSA is a legal determination; however, that legal determination is premised on findings of historical fact. *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (reviewing "the district court's ultimate conclusion that Charles Cranford is an 'employer' de novo" and reviewing "the court's subsidiary findings for clear error."); *Castillo v. Givens*, 704 F.2d 181, 185 (5th Cir. 1983) (noting that "the ultimate conclusion that an individual is an 'employee' within the meaning of the FLSA is a legal determination rather than a factual one.").

## Claims

Plaintiffs contend that the maître d's were "employers" (not "tipped employees") under the FLSA because they hired, disciplined, scheduled, and fired servers at Silver Fox. *See* 29 U.S.C. § 203(m). They claim that Defendant thus cannot claim a tip credit against its minimum wage obligations. *Id.* Plaintiffs also claim that Defendant failed to give them proper notice of the tip pool and minimum wage. Defendant argues that it was entitled to take a tip credit and its maître d's properly participated in the tip pool because: (1) its maître d's are tipped employees; (2) its maître d's are not "employers" under the FLSA; and (3) it notified its employees that it was taking the tip credit and posted the notice of the minimum wage requirements.

4

## The FLSA

The FLSA requires employers to pay employees a minimum hourly rate for each hour worked. 29 U.S.C. § 206(a). A partial exception exists for "tipped employees." The FLSA permits an employer to allocate an employee's tips to satisfy up to fifty percent of the statutory minimum wage requirement provided the following two conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of Section 203(m) of the FLSA; and (2) tipped employees must retain all the tips received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m). To take "tip credit," an employer must comply with these prerequisites. *Tiffany English Pub*, 597 F.2d at 467-68 (finding that employees were entitled to the full minimum wage for every hour at issue where restaurant did not inform waiters that a tip-credit was being deducted from their wages). Employees who share in tips through a tip-pooling or tip-splitting arrangement are tipped employees if they customarily and regularly receive more than $30 a month in tips. 29 C.F.R. § 531.54. However, "[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'" *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n. 3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)).

Additionally, the FLSA expressly prohibits employers from participating in employee tip pools. "Congress, in crafting the tip credit provision of [Section 203(m)] of the FLSA, did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 652 (N.D. Ill. 2007) (quoting *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)).

Many courts suggest that an employee's level of customer interaction is the most significant factor in evaluating whether he qualifies as a "tipped employee" under the FLSA. *See Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079 at * 7, *10 (S.D. Tex. July 9, 2008) (agreeing with the Sixth Circuit that the level of customer interaction is "highly relevant" and that the extent of an employee's interaction with customers is "critical" in determining whether an employee may participate in a valid tip pool) (citing *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550 (6th Cir. 1999); *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 300-02 (6th Cir. 1998)). *See also Morgan*, 625 F. Supp. 2d at 652 (focusing on employees' customer-related activities to determine whether they were properly included in tip pool); *Townsend v. BG-Meridian, Inc.*, 2005 WL 2978899, *7 (W.D. Okla. Nov. 7, 2005)(same).

Plaintiffs contend that Silver Fox's tip pool was invalid because the maître d's were employers who shared in the pool. (Pl.'s Resp. at 12.) Defendant agrees that the maître d's participated in the tip pool, but argues that they were "tipped employees" and not employers. 29 U.S.C. § 203(t) (defining tipped employee as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 576 n. 1 (N.D. Ill. 2004). All maître d's employed by Silver Fox received in excess of $30 per month in tips. (Def.'s App. 164.) All tips collected in the tip pool are distributed to Silver Fox employees. (*Id.*) Silver Fox does not retain any of the tip pool. (*Id.*)

As a server, Rudy received "on the job coaching from the maître d' Melinda Randall" ("Randall"). (Def.'s App. 46.) Rudy explained that Randall had been a lifelong server who knew how tables should be served. (*Id.*) Rudy described Randall as being "all over the [serving] floor." (*Id.* 42.) He noted that she engaged in guest interactions, helped servers with problems and with

6

wine service, and generally did anything and everything that made the guest experience run efficiently and smoothly. (*Id.* 43.) The maître d's had more seniority and experience than the regular servers and greater responsibilities within the restaurant, including important customer service functions, such as assuring the tables were set in accordance with guest requests, serving food and drinks to tables, greeting customers, checking on tables, and performing table visits if a guest had a problem or question during the dinner service. (Def.'s App. 136-39.)

Although the Fifth Circuit Court of Appeals has not addressed whether employees with similar duties are entitled to share in tip pools, the Sixth Circuit has held that "hosts" properly share in a tip pool where "they sufficiently interact with customers in an industry (restaurant) where undesignated tips are common." *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301 (6th Cir. 1998). The sister circuit court explained that hosts "perform important customer service functions: they greet customers, supply them with menus, seat them at tables, and occasionally 'enhance the wait.'" *Id.* Although the hosts in *Kilgore* were not the "primary customer contact," they had "more than de minimis interaction with the customers" sufficient to qualify them for tips. *Id.* Similarly, a district court within this circuit upheld a mandatory tip pool where servers tipped out to a maître d' (i.e., shared tips with a maître d') whose responsibilities included setting up the dining room, greeting and seating customers, serving the first drink to customers, and assisting servers in serving customers as needed. *Dole v. Continental Cuisine, Inc.*, 751 F.Supp. 799, 800-01 (E.D. Ark. 1990).

The record is clear that the maître d's at Silver Fox were highly involved in customer interaction and satisfaction and should be considered tipped employees as a matter of law, unless

they were statutorily precluded from sharing in the tip pool because they were employers under the FLSA.

## **Employer under the FLSA**

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The statutory definition of employer must be liberally construed to effectuate Congress' remedial intent. *Donovan v. Sabine Irrigation Co., Inc.,* 695 F.2d 190, 194 (5th Cir. 1983). The FLSA's definition of employer is "sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Id.* at 194-95.

The FLSA contemplates that there may be several simultaneous employers who may be responsible for FLSA compliance. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir.1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). Although corporate officers with "operational control" over an employing entity clearly fall within this definition, even if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, the FLSA will apply to that individual, provided he or she possesses control over the aspect of employment alleged to have been violated. *See Elliott Travel*, 942 F.2d at 966; *Dole v. Simpson,* 784 F.Supp. 538, 545 (S.D. Ind. 1991); *see also Rubin v. Tourneau, Inc.,* 797 F.Supp. 247, 253 (S.D.N.Y. 1992) (construing same definition of employer in 29 U.S.C. § 2001(2) to reach a person "if, as a matter of economic reality, that person or entity exerts some degree of control over the employer's compliance" with the statute).

Nevertheless, the designation "employer" under the FLSA does not automatically accompany

supervisory responsibility or the designation "manager;" rather, to be an employer, an individual must "independently exercise control over the work situation." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984). This requires not only a sufficient level of control, but also a nexus to the protected rights at issue. *Id*. at 972 (holding individual liable because "[i]t was only he who could authorize compliance with the Fair Labor Standards Act").

An individual's ability to hire *managerial* staff indicates that the individual may exert sufficient control to be an employer. *See Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 140 (2d Cir. 1999) (stating that "the fact that he hired individuals who were in charge of the [other employees] is a strong indication of control") (citing *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir.1984)). Courts routinely conclude "that liability under the [FLSA] depends on the individual's high position within the company" as well as "the individual's exercise of control." Sandra F. Sperino, *Chaos Theory: The Unintended Consequences of Expanding Individual Liability under the Family and Medical Leave Act,* 9 Empl. Rts. & Employ. Pol'y J. 175, 197 (2005); *see also Freeman v. Foley*, 911 F. Supp. 326, 331 (N.D. Ill. 1995) (stating that corporate officers with "operational control" over an employing entity are employers). Indeed, "[t]he overwhelming weight of authority is that a corporate officer with operational control . . . is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983) (collecting cases).

On the other hand, courts generally reject the belief that a *low-level supervisor* of other employees can be individually liable. *See Cont'l Cuisine,* 751 F.Supp. at 802 (rejecting the argument "that any person who has any supervisory duties over other employees, no matter how minimal, becomes an 'employer' within the meaning" of the FLSA); *Agnew,* 712 F.2d at 1513

9

(stating that the FLSA's broad definition should not be taken literally because "it would make any supervisory employee, even those without any control over the corpraiton's payroll, personally liable for the unpaid or deficient wages of other employees"); *Baird v. Kessler,* 172 F. Supp. 2d 1305, 1311 (E.D. Cal. 2001) (noting that "Congress could not have intended to hold individuals personally liable for alleged violations of the FLSA when those individuals cannot even control crucial aspects of the work environment such as when paychecks will issue, how many employees are necessary, and whether or not more employees could be hired").

Courts, looking to the economic realities, inquire whether the alleged employer: (1) has the actual authority to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990). In applying the economic reality test, courts look at "the totality of the circumstances." *Herman,* 172 F.3d at 139. The ultimate question is whether the individual had "supervisory authority over the complaining employee" and is "responsible in whole or part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987).

## Analysis

The Court must consider the economic reality of whether the maître d's at Silver Fox had the actual authority to hire, discipline, or fire employees.[1] Syed A. Raza a/k/a/ Ozzie or Oz Rogers

---

[1] The Court notes that Plaintiffs rely upon the fact that the maître d's were referred to as managers. Plaintiffs also rely on procedures and forms for all of the Silver Fox Steakhouses which, with the exception of the Fort Worth location, had assistant managers. These references, procedures, and forms are not material to the economic reality of whether the maître d's at Silver Fox were employers under the FLSA.

Consolidated Restaurant Operations ("CRO") provided administrative and management

was the proprietor/general manager of Silver Fox for five years. (Pl.'s App. 35; Def.'s App. 104.) Other Silver Fox Steakhouses were run by a proprietor/general manager and two assistant managers. (Pl.'s App. 36.) The Fort Worth location has never had a position called assistant store manager. (*Id*. 47.) Oz Rogers did not hire assistant managers for the Silver Fox location that he ran because he did not need them.[2] (*Id*.) The servers considered the maître d's to be "the voice of Oz." (Def.'s App. 39.) They described Oz as "[running] a tight ship" and explained that the servers knew that they had to do a good job in order to stay in Oz's favor. (*Id*. 39-40.) Oz Rogers was present at Silver Fox 95% of the time it was open–approximately 42-48 hours a week. (*Id*. 108). He came in early before the restaurant opened if he needed to do paperwork. (Pl.'s App. 37.) If he was out

---

services to Silver Fox. Before this lawsuit was filed and before CRO learned of Rudy's allegations regarding the tip pool, CRO sent an email with a news article about a lawsuit involving tip pool practices. (Def.'s App. 1.) The Court finds that neither the email nor the attachment is material to the economic realities of whether the maître d's at Silver Fox were employers under the FLSA.

[2] The declaration of Katrina Wade ("Wade"), a maître d' at Silver Fox for three months during the limitation period at issue here, that she "had all of the normal management functions/responsibilities" is a legal conclusion couched as a historical fact. (Pl.'s App. 64-5.) The same is true with respect to her claim that she hired and fired employees. (*Id*.) "Unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Ramon v. Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985) (internal quotations omitted). Notably lacking are any historical facts such as the names, dates, or titles of the employees she allegedly hired or fired. She does not indicate from whom she obtained her authority and whether it was final. Because Wade's declaration contains nothing but legal conclusions, the Court disregards it.

However, even if the Court were to assume that the maître d's were low-level managers, Wade does not claim for herself the kind of operational control that would make her an employer who would be liable along with the corporation for FLSA violations, particularly since she does not claim control of crucial aspects of the work environment such as when paychecks would issue, how many employees should be hired, how the tip pool was configured, nor a nexus between her control and the alleged FLSA violation. *See Baird*, 172 F.Supp.2d at 1311; *Cont'l Cuisine*, 751 F.Supp. at 802; *Agnew,* 712 F.2d at 1513.

of the restaurant when it was open, he was available by cell phone and expected the maître d's to call him if a problem arose. (*Id.* 43.)

The maître d's were hourly employees making approximately $8.50 per hour plus tips. (Def.'s App. 121.) The maître d' who was promoted from server to maître d' was paid $8.50 an hour as maître d,' and with his share of the tip pool, he made about the same that he made as a server. (Def.'s App. 155.) He described the differences in the two jobs as follows: As a server he just focused on a section of the dining room. (*Id.*) Whereas, as a maître d', he focused on the whole dining room floor. (*Id.*) His goal was to enhance the guest experience (*Id.* 157). He ran food to the tables, did what a server does but for a larger section. (*Id.* 158.) Maître d's interviewed potential servers and filled out interview forms. (Pl.'s App. 44.) Some of the employees contend that the maître d's hired new employees. (*Id.* 73, 80-81, 106.) Although these contentions purport to be based on the affiants' personal knowledge of the facts, these contentions are entirely conclusory. No affiant explains the circumstances or the basis for his or her personal knowledge. No competent summary judgment evidence shows how the servers would have had any personal knowledge of the interaction, or lack thereof, between the maître d's and the proprietor/general manager regarding the hiring process or any other of the maître d's actions. Plaintiffs cite as an undisputed fact Rudy's testimony that Chris Garvin hired Rudy when Garvin was a maître d'. (Pl.'s App. 73.) However, Rudy admitted that he had no way of knowing the interaction between the maître d's and the proprietor/general manager. (Def.'s App. 70.) Some of the paperwork may show that the maître d's occasionally signed forms as "manager," but the economic reality is that the proprietor/general manager made the final decision with respect to whether to hire or not to hire a new employee. (*Id.* 77, 149.)

With respect to firing, Plaintiffs contend that Maître d' Melinda Randall fired a server, Robert Wood. (Pl.'s Resp. at 3.) Similarly, this claim is not based upon competent summary judgment evidence. Rather, it is based entirely upon hearsay-upon-hearsay. Rudy testified that Wood told him that Melinda Randall fired him. (Def.'s App. 91-2.) Rudy does not know the reason Wood was fired, nor does he know what involvement the proprietor/general manager had in the firing. (*Id*.) There is no competent summary judgment evidence that a maître d' could fire a server without approval from the proprietor/general manager. In at least one case, the proprietor/general manager's superior decided to fire a server, told the proprietor/general manager to fire the server, and the proprietor/general manager fired the server.[3] (*Id*. 109, 144.)

The competent summary judgment evidence shows that the proprietor/general manager expected the maître d's to make sure the servers did their jobs properly. (Def.'s App. 40, 111.) The proprietor/general manager expected the maître d's to keep things moving on the dining room floor. (*Id*. 40.) A write-up, either from the proprietor/general manager or the maître d's was a way of letting a server know he or she had done something wrong. (*Id*.) Sometimes the proprietor/general manager would just talk to a server who did something wrong and sometimes it would be brought up in pre-shift meetings. (*Id*. 41.) Most of the time, the proprietor/general manager and the maître d' were both present at the pre-shift meetings. (*Id*.) If a maître d' wrote up a server without first discussing it with the proprietor/general manager, the maître d' would discuss the write-up with the proprietor/general manager later, and they would decide if further action was required. (*Id*. 140.) At one point the proprietor/general manager told Maître d' Chris Pennington that he was not allowed

---

[3] Nick Garvey, the President of Steakhouse Division at CRO made the decision to fire Rudy, and Oz Rogers fired him. (Pl.'s App. 44.)

to write up a server, although Chris thought he could do so. (*Id*. 159-60.) Clearly, the proprietor/general manager made the final decision with respect to what counseling or discipline was necessary. (*Id*. 140.)

Considering the economic reality of whether the maître d's at Silver Fox had the final authority to hire, discipline, and fire employees, the competent summary judgment evidence shows that the maître d's at Silver Fox had the authority to interview potential new hires. Nevertheless, the final decision on hiring, disciplining, or firing servers belonged to the proprietor/general manager. Thus, the first factor does not weigh in favor of the maître d's being employers under the FLSA.

With respect to the second factor that the Court must determine according to economic realities, whether the maître d's controlled the server's work schedule or conditions of employment, Plaintiffs contend that the maître d's scheduling of servers and filling out the floor chart satisfies this factor. Plaintiffs argue that because higher tips were generated by some sections of the restaurant and on some days of the week, the maître d's scheduling significantly impacted the server's working conditions and opportunity to earn tips. The maître d's scheduled the servers based on guidelines set by the proprietor/general manager, and the hosts and the proprietor/general manager were also involved in scheduling servers. (Def.'s App. 135, 163.) Additionally, the maître d's, hosts, and proprietor/general manager took into account guest requests when they were scheduling servers and tables. (*Id*.) The maître d's could let servers go home early if they needed to leave or if the restaurant was not busy at the end of a shift. (Pl.'s App. 52.) One of the maître d's, Chris Pennington, a server who was promoted to maître d' and then returned to the server position, had no control over schedules and never scheduled the servers when he was a maître d'. (*Id*. 158.) Even

14

assuming the maître d's had unfettered control over the servers' schedules, which the record does not demonstrate, this is not the kind of control required to make the maître d's employers because it does not affect Silver Fox's compliance or lack of compliance with the FLSA. The second factor weighs in favor of the maître d's as employers under the FLSA, if at all, only slightly.

With respect to the economic reality of whether the maître d's determined the rate of the servers' pay or the method of payment, Plaintiffs do not even contend that the decision to pay the servers minimum wage plus tips was made by the maître d's. Nor do that claim that the maitre d's made or ran profit and loss statements, made pro forma budgets, figured payroll, transferred employees between restaurants, made policies, or were involved with policymaking or ownership. (Def.'s App 147.) They did not set wages, did not design the tip pool, and did not decide how the tip pool operated or what percentage of the tip pool was to be distributed to which individual. (*Id*. 145.) At one point, Maître d' Randall did not know what percentage of the tip pool she was receiving. (*Id*. 123.) Maître d's did not decide what to order for the restaurant, when to order it, or how to spend money. (*Id*. 145.) They were required to get permission from the proprietor/general manager even to order ice when the supply was running low. (*Id*. 142.) Maître d's did not calculate tax deductions, did not transmit taxes to government agencies, and did not sign checks. (*Id.* 147.) Rather, a separate corporation, CRO provided administrative and management services to Silver Fox restaurants and regularly maintained the payroll. (*Id*. 274.) Clearly, the third factor weighs against the maître d's being employers because the maître d's did not determine the rate of the servers' pay nor the method of payment.

The fourth factor, whether the individual maintained employment records, also weighs against the maître d's being employers. Although the maître d's filed employee records in the file

15

cabinet in the proprietor/general manager's office, their duties with respect to the records were clerical. (*Id*. 148.)

The maître d's had keys to the restaurant which also opened the liquor closet and the proprietor/general manager's office. They could use the proprietor/general manager's code to the computer and comp food for a patron when the proper circumstances arose. They took turns with the proprietor/general manager opening and closing the restaurant. During closing, the servers would give the closer maître d' their receipts, cash, and credit card slips, and the closer would reconcile them before the server left.

Based on the totality of the circumstances, the Court concludes that the maître d's were no more than low-level supervisors who were not responsible for FLSA compliance and thus were not employers under the FLSA. *See, e.g., Cont'l Cuisine,* 751 F.Supp. at 802 (rejecting the argument "that any person who has any supervisory duties over other employees, no matter how minimal, becomes an 'employer' within the meaning" of the FLSA). As indicated, the maître d's lacked the final hiring, disciplining, and firing authority, did not control the conditions of employment or maintain employment records, did not set wages, and did not design or control the amount contributed to or received from the tip pool nor which employees would participate in it. The maître d's closing-related duties were purely clerical. Most importantly, the maître d's did not control "the aspect of employment [the payment of appropriate wages] alleged to have been violated." *Freeman,* 911 F.Supp. at 331; *see also Riordan,* 831 F.3d at 694 (stating that an individual is an employer if he is "responsible in whole or part for the alleged [FLSA] violation").

**Notice**

Section 203(m) provides:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to - (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

Silver Fox gave each new hire a copy of the Associate Advisor which stated the following:

> For waiters and waitresses, we take a tip credit against minimum wage. The amount of this credit is the maximum allowable by federal or state law, whichever is more favorable to the Associate.
>
> You must average at least minimum wage for total hours worked. (Your hourly rate plus your tips must meet or exceed the full minimum wage.)

(Def.'s App. 52-53, 56-57, 58-60, 182, 203.) The proprietor/general manager told servers when they were hired that they would be tipping out 25 percent to the supporting staff (sharing tips with members of the tip pool) and would make $2.15 an hour plus tips. (Pl.'s App. 44.) For example, Silver Fox informed Billie Poe of the tip pool policy during training and Christina Wright was informed of the tip pool policy when she interviewed for the server position. (*Id*. 102, 106.) Explaining that an employee would make $2.15/hour plus tips and that they would participate in a tip pool has been determined to be sufficient notice under Section 203(m). *See Kilgore v. Outback*

17

*Steakhouse*, 160 F.3d 294 (6th Cir. 1998). Defendant complied with the notice requirements of Section 203(m).

Employers also are required by the Department of Labor to inform employees of the relevant minimum wage. 29 C.F.R. 516.4 provides in pertinent part:

> Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

Silver Fox complied with this requirement by posting the required poster in the area where servers picked up food from the kitchen. (Def.'s Supp. App. 1.) The poster was clearly visible to all restaurant staff. (*Id.*)

During the relevant time period, Silver Fox's maître d's were not "employers" under the FLSA but were employees who customarily and regularly received tips. As such, they were permitted as a matter of law to participate in Defendant's legally-maintained tip pool. Employees received notice of the tip pool and minimum wage requirements. Defendant is entitled to summary judgment on all Plaintiffs' claims. Plaintiffs' summary judgment motion is without merit.

## RECOMMENDATION

Defendant is entitled to judgment as a matter of law, and accordingly, the District Court should **GRANT** Defendant's motion for summary judgment (doc. 75). Further, the District Court should **DENY** Plaintiffs' motion for partial summary judgment (doc. 73).

**SO RECOMMENDED**, August 18, 2010.

_____
**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).